Filed 4/28/14  Kaufman v. Diskeeper CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BARRY B. KAUFMAN et al.,<br><br>       Plaintiffs and Appellants,<br><br>v.<br><br>DISKEEPER CORPORATION,<br><br>       Defendant and Respondent. | B247315<br>(Los Angeles County<br>Super. Ct. No. BS137215) |

APPEAL from a judgment of the Superior Court of Los Angeles, Kevin C. Brazile, Judge.  Affirmed.

Wilson Elser Moskowitz Edelman & Dicker, Patrick M. Kelly and David S. Eisen; Law Offices of Barry B. Kaufman and Barry B. Kaufman for Plaintiffs and Appellants.

Jeffer Mangels Butler & Mitchell, Louise Ann Fernandez, Dan P. Sedor and An Nguyen Ruda; Jones Day, Elwood Lui and Peter E. Davids for Defendant and Respondent.

Appellants Barry B. Kaufman and Alexander Godelman challenge the trial court's confirmation of an arbitration award in favor of respondent Diskeeper Corporation (Diskeeper). They maintain the award must be vacated because the arbitrator refused to hear material evidence and exceeded his powers in fashioning the award; in addition, they argue the award contravenes fundamental public policies. We reject their contentions and affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prior Litigation and Settlement Agreement*

Diskeeper is a software company located in Burbank. In 2006, Diskeeper hired Godelman as its Chief Information Officer, and also hired Marc LeShay, who worked as Godelman's subordinate. After LeShay resigned from his position, Diskeeper terminated Godelman. Upon leaving Diskeeper's employment, Godelman and LeShay requested inspections of their personnel records. Diskeeper permitted them to review their records, and gave them copies of documents they had signed relating to their employment.

In July 2007, Godelman and LeShay initiated a lawsuit against Diskeeper in which Godelman asserted claims for wrongful termination. Kaufman, an attorney, represented Godelman and LeShay in the action. Kaufman later represented other former or then-current Diskeeper employees in separate suits against Diskeeper.

In June 2009, Godelman and LeShay entered into a settlement of their action against Diskeeper. The settlement agreement contained several terms pertinent here. Paragraph 8, entitled "Return of Property," obliged Godelman and LeShay to return "all property of [Diskeeper] . . . in their possession including, without limitation, e-mails, memoranda, documents, files and instruction

2

manuals." Paragraph 8 encompassed documents that Godelman and LeShay found after the execution of the settlement agreement, as well as documents Diskeeper produced during the action.

Paragraph 9, entitled "<u>Confidentiality</u>," set forth several interrelated obligations. Subparagraph A of paragraph 9 (paragraph 9(A)) obliged Godelman and LeShay not to "disclose, disseminate or publicize to any other persons the terms and conditions of this [a]greement or the facts or allegations underlying [it] or the [l]awsuit," with the exception of certain specified persons, including "wives, financial advisors and attorneys."

Under paragraph 9(B), Godelman and LeShay agreed not to disclose information to any such person before obtaining that person's written assurance that he or she would abide by "the terms of Paragraph 9." Paragraph 9(B) further stated that with respect to disclosures to attorney Kaufman, he was "exempt from this requirement" because his signature on the settlement agreement itself represented his consent "to be bound by the non-disclosure terms of this [a]greement."

Paragraph 9(C) required Godelman and LeShay to notify Diskeeper's counsel whenever disclosure of the settlement agreement was sought in legal proceedings. Paragraph 9(C) further provided that Godelman, LeShay, and "any other person who agree[d] to abide by this pledge of confidentiality" were barred from disclosing information regarding the settlement agreement to Diskeeper's former or then-current employees.

Paragraph 9(D) authorized Kaufman to continue his representation of certain former and then-current Diskeeper employees, stating: "Nothing contained herein is intended to restrict or limit Kaufman's ability to represent these persons." Paragraph 9(D) nonetheless specified that Kaufman was obliged to engage in

3

mediation on behalf of those individuals before initiating any litigation against Diskeeper. Paragraph 9(D) also imposed a limit on the maximum initial demand that Kaufman could assert during any mediation, and stated: "Notwithstanding this [p]aragraph, Kaufman shall agree not to disclose the amounts paid, consideration or any terms and conditions of this [a]greement."

Paragraph 9(E) provided: "[Godelman and LeShay] agree that the sum of $35,000 will be deemed reasonable liquidated damages for each breach of [paragraph 9], except that each . . . will only be responsible for the liquidated damages amount attributable to his disclosure, or any disclosure by the third party who received information from him . . . ."

Under other terms of the settlement agreement, the parties agreed to submit disputes to binding arbitration "before a retired state or federal judge affiliated with JAMS." The agreement also contained an attorney fee provision, which provided for a fee award to the prevailing party in any such arbitration.

B. *Underlying Proceedings*

1. *Events Preceding Arbitration*

In June 2009, Kaufman delivered three boxes of documents to Diskeeper's counsel on behalf of Godelman and LeShay. When asked whether the boxes contained "everything," Kaufman replied in the affirmative. After receiving the boxes and that assurance, Diskeeper gave Kaufman the funds required under the settlement agreement.

Later, while representing other parties in an unrelated wage and hour lawsuit against Diskeeper, Kaufman propounded discovery regarding documents related to Diskeeper's training courses. When Diskeeper opposed the discovery and filed a motion for a protective order, Kaufman filed a motion to compel. In

4

September 2010, while the motions were pending, Kaufman conducted the deposition of Brad Pitler, a former Diskeeper employee. During the deposition, Kaufman used three training documents Godelman had obtained from Diskeeper; in addition, Kaufman showed the documents to his co-counsel in the action. Diskeeper objected to Kaufman's use of the documents and asked Kaufman to return them, but Kaufman declined to do so. Later, in November 2010, Diskeeper produced redacted versions of the three documents, subject to a protective order.

### 2. *Arbitration*

In January 2011, Diskeeper commenced an arbitration by filing a complaint and demand for arbitration. Diskeeper asserted claims against appellants for breach of the settlement agreement, breach of the implied covenant of good faith and fair dealing, unjust enrichment, intentional misrepresentation, negligent misrepresentation, and civil conspiracy. The matter was submitted to arbitration before retired Superior Court Judge Haley J. Fromholz.

### a. *Evidentiary Hearing*

The arbitrator set an evidentiary hearing for September 7, 2011. According to the arbitrator's procedural order, the hearing was expected to take two days. During the hearing, Kaufman represented Godelman, and other attorneys represented Kaufman.

Godelman was served with a notice to appear on September 7, 2011. On that date, at the beginning of the hearing, Kaufman announced that he had received an e-mail from Godelman stating that he did not intend to appear. According to the e-mail, Godelman had several reasons for his decision, including that he did not wish to relive "all of the crap that Diskeeper threw at [him] before,"

5

that Diskeeper's claims were "about [Kaufman], not [him]," that he was dealing with his wife's surgery and "slow recovery," and that he had "responsibilities at work." Kaufman did not request a continuance to obtain Godelman's testimony; rather, he proposed that Godelman's deposition testimony be received into evidence, and opposed Diskeeper's proposal that Godelman testify by telephone. The arbitrator ruled that because Godelman had failed to comply with the notice to appear, Diskeeper could "use [Godelman's] deposition for any purpose."

The next morning, shortly before the close of the presentation of evidence, Kaufman told the arbitrator that Godelman had agreed to testify by telephone at 1:30 p.m. The arbitrator declined to permit Godelman to testify, stating: "If there were to be an effort to postpone the hearing or postpone his testimony or have him appear by some alternatives, the time to do that was when he failed to appear."

### b. *Interim Award*

On January 16, 2012, the arbitrator issued his interim award. The arbitrator found that Godelman breached his obligations under paragraph 8 of the settlement agreement by failing to return all of Diskeeper's documents. The arbitrator further found that Kaufman breached his duty of confidentiality under paragraph 9(A) of the settlement agreement by using Diskeeper's training documents during the Pitler deposition and showing them to his co-counsel; in addition, the arbitrator determined that Kaufman made a negligent misrepresentation when he told Diskeeper that Godelman and LeShay had returned all the documents required under the settlement agreement. The arbitrator concluded that Diskeeper was entitled to an order directing the return of Diskeeper's documents, an award of $70,000 "in liquidated damages" from Kaufman, and an award of attorney fees

and costs as the prevailing party. The arbitrator reserved the determination of Diskeeper's fees and costs for his final award.

### c. *Motion for Judgment Notwithstanding the Verdict*

Appellants filed a motion for judgment notwithstanding the verdict (JNOV), arguing that Godelman obtained the pertinent documents pursuant to Labor Code section 432, which obliges employers, upon request, to provide employees with copies of documents they signed in the course of their employment. The motion contended that the documents were Godelman's property, and thus neither he nor Kaufman breached the settlement agreement by retaining or using them.

In denying the motion, the arbitrator concluded that he lacked the discretion to "rehear[]" the case so that appellants could "pursue a different legal theory."

### d. *Final Award*

On April 4, 2012, the arbitrator issued his final award, which incorporated the interim award and contained findings regarding Diskeeper's attorney fees and costs. The arbitrator determined that Diskeeper was entitled to $297,000 in attorney fees and $88,034.69 in costs and expenses. The arbitrator further stated: "Because Diskeeper prevailed against Godelman because of the acts, omissions and advice of his agent and attorney, Kaufman, it would be inequitable to award [the fees, costs, and expenses] against Godelman as well. Acccordingly, the award . . . is assessed only against . . . Kaufman."

### C. *Proceedings Before the Trial Court*

On May 9, 2012, appellants filed a petition to vacate the arbitration award ruling. They later filed an amended petition and motions to vacate the award.

7

Diskeeper opposed the petitions and motions, and filed a motion to confirm the award. Following a hearing, the trial court granted Diskeeper's motion. Judgment in favor of Diskeeper and against appellants was entered on December 14, 2012. This appeal followed.

## DISCUSSION

Appellants contend the trial court improperly confirmed the award, arguing (1) that the arbitrator improperly declined to permit Godelman to testify by telephone, (2) that the award contravened public policy, and (3) that the remedies in the award were not authorized by the settlement agreement. For the reasons discussed below, we disagree.

A. *Governing Law*

To enforce the finality of arbitration, the statutes governing nonjudicial arbitration awards minimize judicial intervention. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 (*Moncharsh*).) Once a petition to confirm an award is filed, the superior court has only four courses of conduct: to confirm the award, to correct and confirm it, to vacate it, or to dismiss the petition. (*United Brotherhood of Carpenters, etc., Local 642 v. DeMello* (1972) 22 Cal.App.3d 838, 840; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 566, pp. 1071-1073.) The trial court is empowered to correct or vacate the award, or dismiss the petition, upon the grounds set out in the pertinent statutes; "[o]therwise courts may not interfere with arbitration awards." (*Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332* (1974) 40 Cal.App.3d 431, 437; see also *Moncharsh*, *supra*, 3 Cal.4th at pp. 10-13.)

8

In seeking to vacate the award and opposing its confirmation, appellants contended the arbitrator improperly refused to "hear evidence material to the controversy" by declining to permit Godelman to testify by telephone (Code Civ. Proc., § 1286.2, subd. (a)(5)). They also maintained that the award "exceeded [the arbitrator's ] powers" because it violated the public policy underlying Labor Code section 432 and fashioned a remedy not supported by the settlement agreement (Code Civ. Proc., § 1286.2, subd. (a)(4)). (Italics omitted.)

We subject the trial court's rulings and the underlying award to different standards of review. To the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence. (*Turner v. Cox* (1961) 196 Cal.App.2d 596, 603.) To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo. (*Advanced Micro Devices, Inc. v. Intel Corp*. (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*).)

We apply a highly deferential standard of review to the award itself, insofar as our inquiry encompasses the arbitrators' resolution of questions of law or fact. Because the finality of arbitration awards is rooted in the parties' agreement to bypass the judicial system, "it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.]" (*Moncharsh, supra*, 3 Cal.4th at pp. 10-11.)

Under this rule, courts will not review the arbitrator's reasoning or the sufficiency of the evidence supporting the award. (*Moncharsh, supra*, 3 Cal.4th at pp. 10-11.) Moreover, absent "narrow exceptions" discussed further below (see pts. B., C. & D., *post*), "an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id*. at p. 11.) These exceptions do *not* encompass errors that are apparent on the face of the award and cause substantial injustice. (*Id*. at p. 32.)

9

Circumstances justifying judicial review arise when the award contravenes "an explicit legislative expression of public policy," or the arbitrator imposes a remedy not authorized by the arbitration agreement. (*Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1416-1417 & fn. 1 (*Cotchett, Pitre & McCarthy*); *Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 375.)

B.  *No Error Regarding Exclusion of Godelman's Telephonic Testimony*

We begin with appellants' contention that the arbitrator denied them a fair hearing by declining to permit Godelman to testify by telephone.

1.  *Governing Principles*

Code of Civil Procedure section 1286.2, subdivision (a)(5), states that the trial court shall vacate an arbitration award if it determines that "[t]he rights of the party were substantially prejudiced . . . by the refusal of the arbitrator[] to hear evidence material to the controversy . . . ."  Under that provision, "the arbitrator's obligation 'to hear evidence' does not mean that the evidence must be orally presented or that live testimony is required.  'Legally speaking the admission of evidence is to hear it.'  [Citation.]  An arbitrator 'hears' evidence by providing a 'legal hearing,' that is, by affording an 'opportunity to . . .  present one's side of a case.'  [Citation.] . . .  Thus, a 'hearing' does not necessarily include 'an opportunity to present live testimony or be subject to cross examination.' [Citation.]" (*Schlessinger v. Rosenfeld, Meyer & Susman*  (1995) 40 Cal.App.4th 1096, 1105.)

When a party contends the arbitrator breached the obligation to hear evidence, the trial court's inquiry ordinarily focuses on the existence of prejudice,

as assessing the evidence's materiality would usually require a "judicial second-guessing" of the arbitrator's factual and legal determinations. (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 438, 439.) The refusal to hear evidence is substantially prejudicial only if "the arbitrator might well have made a different award had the evidence been allowed," in view of the arbitrator's legal theory regarding the case. (*Id*. at p. 439.) We review the trial court's determination regarding prejudice for the existence of substantial evidence. (*Burlage v. Superior Court* (2009) 178 Cal.App.4th 524, 529 (*Burlage*).)

### 2. *Underlying Arbitration Proceedings*

On September 7, 2011, at the beginning of the evidentiary hearing before the arbitrator, the following colloquy occurred:

"[] Kaufman: . . . [¶] Even though I let Mr. Godelman, my client, know that he was required to be here for purposes of today's proceeding, I received an e-mail at 8 p.m. last night . . . informing me that he was not going to be coming today. [He t]hanked me for defending his interests, but . . . his wife recently had cancer surgery.

"Arbitrator []: All that's necessary is to say he's not going to be here. [¶] Was he under subpoena?

"[] Kaufman: Notice to appear. [¶] So I did explain to him the significance of it, and I don't mind really sharing his e-mail, if you want. But I did everything that I could." (Caps omitted.)

The arbitrator permitted Kaufman to present copies of the e-mail, which stated: "I appreciate everything you have done to defend my interests, I really do, and . . . I will find a way to honor my obligations to you even if I don't have a pot to piss in right now. But you know how I feel about . . . all of the crap that

11

Diskeeper threw at me before. Reliving that nightmare is not something I am willing to do. Besides, the case they filed is about you, not me, so it's your problem really, not mine. [¶] With Diana's surgery and slow recovery, and all of my responsibilities at work, I can't do what you asked. I'm not coming tomorrow. I can't even give you a commitment that I can call in by phone at a given time. My family and work are more important to me than this. I gave my deposition, and I told the truth. *I don't have anything to add*. The truth always comes out. I'm sure you'll win. Let me know how it turns out." (Italics added.)

Diskeeper's counsel asserted that live testimony from Godelman was essential regarding certain matters, including changes he had made to his deposition testimony. Counsel asked the arbitrator for leave to arrange for Godelman to testify by telephone. In the alternative, counsel urged the arbitrator to make a finding against Godelman because he was "in default."

Kaufman responded: "With regard to a client who's not here . . . , I think this impacts me adversely a lot more than it adversely affects [Diskeeper] because[] in his deposition, they took a full three hours, asked him a ton of questions[.] . . . I didn't ask questions because I anticipated that he would be here as my client and [that I would] be able to elicit the testimony that I wanted to elicit from him. [¶] So that's the reason I didn't ask questions, as is commonly done. [¶] With regard to the transcript itself, to eliminate any arguable prejudice to Diskeeper, *I will stipulate that you may receive the entire transcript . . . .*" (Italics added.)

Kaufman further maintained that Godelman's changes to his deposition testimony concerned only Godelman's fee agreement with Kaufman, not paragraphs 8 and 9 of the settlement agreement. Kaufman thus argued that the changes would become relevant in the arbitration only if Godelman were

determined to be the prevailing party, for purposes of a fee award under the settlement agreement. Kaufman stated: "[T]he appropriate time for . . . live testimony [regarding the changes] would be *only after there's a determination that* [*Diskeeper*] *loses . . . .*" (Italics added.)

The arbitrator stated: "Okay. I don't want to spend more time on the logistics of getting Mr. Godelman here or . . . answer the telephone or respond to questions over the telephone. He's under [s]ubpoena. He hasn't appeared. [¶] . . . [¶] . . . [Y]ou can use his deposition for any purpose and his changes to the deposition will be excluded unless [Diskeeper] wants to bring them in."

The next morning, shortly before the close of the presentation of evidence, Kaufman informed the arbitrator that Godelman would be available to testify by telephone at 1:30 p.m. The arbitrator declined to permit Godelman to testify, stating: "That is not . . . an adequate response to the subpoena. . . . [T]he other side issued a notice to have him appear yesterday and he failed to appear. [¶] His failure to appear was noted and discussed. The other side elected to use his deposition, which has been done. And I ruled that Mr. Godelman has forfeited his chance to appear. If there were to be an effort to postpone the hearing or postpone his testimony or have him appear by some alternatives, the time to do that was when he failed to appear. So we have moved on past that question."

Later, at approximately 12:45 p.m., the parties completed the presentation of their evidence, and the arbitrator asked them to submit post-trial briefs.

### 3. *Analysis*

In confirming the arbitration award, the trial court found appellants had failed to show that the arbitrator's exclusion of Godelman's telephonic testimony resulted in substantial prejudice to them. As explained below, we agree.[1]

Under the arbitration statutes, the arbitrator is authorized to rule on requests to postpone or adjourn the evidentiary hearing, and "the admission and exclusion of evidence . . . ." (Code Civ. Proc, § 1282.2, subds. (b), (c).) Moreover, the parties, in submitting to arbitration, became subject to the rules of JAMS, which afford an arbitrator discretion regarding the evidentiary hearing, including the admission of evidence (see JAMS Rule 22). JAMS Rule 22(d) provides that although "[s]trict conformity" to the rules of evidence is not required during the evidentiary hearing, the arbitrator "shall" consider evidence that "he or she *finds* relevant and material to the dispute," and may be guided in that determination "by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence." (Italics added.) Generally, under state and federal rules of evidence, the proponent of evidence has the burden of establishing that it is relevant. (*People v. Morrison* (2004) 34 Cal.4th 698, 724; *Lorraine v. Markel American Ins. Co.* (D. Md. 2007) 241 F.R.D. 534, 538.) JAMS Rule 22(d) also permits the arbitrator to exclude immaterial or unduly repetitive testimony, provided that all

---

[1]    In an apparent effort to challenge the trial court's written ruling, issued October 22, 2012, appellants note that on October 18, 2012, during a hearing on the parties' petitions, the court remarked that it was "troubled" by the arbitrator's decision not to hear Godelman's telephonic testimony. However, as a matter of established appellate principle, the focus of our review is on the court's written order, not on its antecedent oral remarks. (*Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 329.) As explained in *Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374, 1385, "[g]enerally, oral opinions of the trial court may not be used to impeach the findings or judgment. [Citation.]"

parties "are afforded the opportunity to present material and relevant evidence." In assessing whether the arbitrator improperly denied a continuance or excluded evidence, we may look to whether a similar ruling would have been within the discretion of a trial court. (*Moore v. Griffith* (1942) 51 Cal.App.2d 386, 389 (*Moore*); *Atlas Floor Covering v. Crescent House & Garden, Inc.* (1958) 166 Cal.App.2d 211, 216 (*Atlas Floor Covering*).)

Here, Kaufman effectively asked the arbitrator to extend the hearing until the afternoon of September 7, 2011, so that Godelman could supplement his deposition testimony with telephonic testimony. Insofar as Kaufman sought a brief continuance of the hearing, he showed no good cause for it, as he made no offer of proof regarding the proposed testimony, and did not explain why Godelman could not testify immediately. (*Moore, supra,* 51 Cal.App.2d at p. 389 [arbitrator did not improperly refuse to hear testimony from absent witness by denying continuance because no offer of proof was made regarding witness's testimony]; see also *Simmons v. Dryer* (1963) 216 Cal.App.2d 733, 745 [trial court properly denied request to hear further testimony from witness, as no excuse was offered regarding why the witness was not available to testify when the request was made].)

For similar reasons, appellants failed to show that the arbitrator erred in excluding Godelman's telephonic testimony, and that they were "substantially prejudiced" by its exclusion (Code Civ. Proc., § 1286.2, subd. (a)(5)). No error in excluding evidence is shown when the record establishes that the arbitrator reasonably viewed the proffered testimony as cumulative. (*Atlas Floor Covering, supra,* 166 Cal.App.2d at p. 216.) Appellants never suggested to the arbitrator how Godelman's telephonic testimony would have augmented his deposition testimony and the other evidence presented at the hearing. In view of appellants'

15

conduct at the beginning of the evidentiary hearing, the arbitrator reasonably could have inferred that the proposed telephonic testimony would be cumulative. Godelman's e-mail stated that he "d[id]n't have anything to add" to his deposition testimony; in addition, Kaufman stipulated to the admission of Godelman's deposition transcript, requested no continuance to secure further testimony from Godelman, and *opposed* Diskeeper's request that Godelman testify by telephone, insofar as that testimony might relate to issues other than a fee award.[2]

Appellant also failed to show substantial prejudice from the arbitrator's ruling regarding Godelman's telephonic testimony. Under state and federal rules of evidence, to preserve a claim that the exclusion of evidence was prejudicial, a party generally must make an offer of proof, or otherwise establish the substance of the excluded evidence. (Evid. Code, § 354, subd. (a); Fed. Rules Evid., rule 103(a)(2), 28 U.S.C.) Thus, determining prejudice from the exclusion of evidence ordinarily requires an assessment of the offer of proof to the arbitrator. (*Hyatt v. Eckel Valve Co.* (1959) 169 Cal.App.2d 35, 37-38 [arbitrators did not improperly refuse to hear testimony when offer of proof to arbitrators established neither that testimony was relevant nor that its exclusion was prejudicial].)

---

[2]     Appellants contend the arbitrator erred in excluding the telephonic testimony, arguing that at the beginning of the hearing, the arbitrator expressly requested briefing regarding "what the law permitted him do about Godelman's absence." However, the record discloses no request by the arbitrator regarding the admissibility of telephonic testimony from Godelman. Rather, it shows that after Godelman failed to appear at the hearing, Diskeeper argued, inter alia, that the arbitrator should "make a finding against [Godelman]" because he was "in default." When the arbitrator suggested that Diskeeper provide briefing regarding that matter, Diskeeper's counsel replied that she would be happy to do so. Nonetheless, she apparently provided no such briefing, and the arbitrator made no finding against Godelman based on a default.

16

Here, appellant made no such offer. Although appellants later presented a description of Godelman's telephonic testimony to the trial court, that description cannot be regarded as a timely offer of proof. (See *Grunwald-Marx, Inc. v. L.A. Joint Board* (1959) 52 Cal.2d 568, 587 [arbitrator's obligation to hear evidence mandates the admission of material evidence only when offered "at the proper time"].)

*Burlage*, *supra*, 178 Cal.App.4th 525, upon which appellants rely, is distinguishable. There, the plaintiffs asserted claims against the former owner of their residential property, alleging that she failed to disclose that improvements on the property encroached on an adjoining country club. (*Id.* at pp. 527-528.) The arbitrator granted the plaintiffs' motion in limine to exclude the former owner's evidence that prior to the arbitration, the property's boundaries had been adjusted to eliminate the encroachment. (*Id.* at pp. 528-529.) Because that ruling made it impossible for the former owner to show that the plaintiffs suffered no damages, the appellate court held that the arbitrator had improperly refused to hear material evidence critical to the former owner's defense. (*Id*. at pp. 529-532.) Here, in contrast, appellants never informed the arbitrator how Godelman's telephonic testimony would augment the evidence presented during the arbitration.[3]

---

[3] For similar reasons, appellants' reliance on federal decisions applying the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) also is misplaced. In all but two of the cases, the arbitrators were apprised of the substance of the evidence they declined to admit or consider. (*Hoteles Condado Beach etc. v. Union de etc.* (1st Cir. 1985) 763 F.2d 34, 40 [arbitrator improperly declined to give evidentiary weight to transcript of prior trial admitted into evidence]; *Tempo Shain Corp. v. Bertek, Inc.* (2d Cir. 1997) 120 F.3d 16, 20, 21 [arbitrators improperly declined to hear testimony from witness when record of arbitration proceeding showed proposed testimony was not cumulative]; *Gulf Coast Indus. Workers Union v. Exxon Co., USA* (5th Cir. 1995) 70 F.3d 847, 850 [arbitrator declined to admit positive drug test].)

*(Fn. continued on next page.)*

Pointing primarily to *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881 (*Hoso Foods*), appellants contend the ruling excluding Godelman's telephonic testimony necessarily denied them a fair hearing, and thus nullified the requirement that they show substantial prejudice. We disagree. Generally, a party must establish the existence of prejudice from the erroneous exclusion of evidence unless the record shows a "structural error requiring automatic reversal." (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 534.) "In the civil context, structural error typically occurs when the trial court violates a party's right to due process by denying the party a fair hearing. [Citation.] Structural errors requiring automatic reversal include denying a party's request for a jury trial [citation] and violating a party's right to present testimony and evidence [citations]." (*Ibid.*)

Regarding the latter, automatic reversal is required only when there is an erroneous exclusion of "*all* evidence relating to a claim, or *essential e*xpert testimony without which a claim cannot be proven . . . ." (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1114.) "The erroneous denial of some but not all evidence relating to a claim [citations] differs from the erroneous denial of all evidence relating to a claim, or essential expert testimony without which a claim cannot be proven [citations]. In the former situation, the appellant

In the remaining cases, the arbitrator terminated the evidentiary hearing even though the arbitrator knew the parties had not completed the presentation of their evidence. (*Teamsters Local 312 v. Matlack, Inc.* (3d Cir. 1997) 118 F.3d 985, 990 [arbitrator agreed to permit party to present additional evidence on the merits of the action, but rendered a decision without doing so]; *Teamsters, Chauffeurs, etc. v. E.D. Clapp Corp.* (N.D.N.Y. 1982) 551 F.Supp. 570, 577-579 [arbitrator failed to resume evidentiary hearing after "disturbances" caused by "one or both of the parties"].) In contrast, as we elaborate below, here the arbitrator ended the evidentiary hearing only after the parties stated they had no further evidence to present.

18

must show actual prejudice; in the latter situation, the error is reversible per se." (*Id.* at p. 1115.) Thus, in *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1432-1433, the appellate court held that the improper exclusion of certain evidence supporting the plaintiff's theory of liability was not structural error, as the ruling did not entirely foreclose that theory. In contrast, in *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 290-291, the appellate court concluded that structural error occurred when the trial court abruptly terminated the trial without permitting a party to complete the presentation of his evidence.

The record before us establishes no structural error requiring automatic reversal. As explained above, appellants have failed to show that the arbitrator erred in excluding Godelman's telephonic testimony. Moreover, even if there were error, appellants have not provided a record demonstrating that they were denied a fair hearing.[4] The limited record before us lacks a full transcript of the proceedings before the arbitrator. The excerpts from that transcript in the record show that Kaufman agreed to the use of Godelman's deposition transcript, and that the arbitrator otherwise admitted the parties' evidence, aside from Godelman's telephonic testimony. Indeed, the arbitrator ended the evidentiary hearing only after the parties stated that they had no more evidence to offer. Furthermore, before the trial court, Diskeeper pointed to transcript excerpts showing that the arbitrator admitted some evidence related to the purported subject matter of

---

[4] A fundamental rule of appellate review is that "'"[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" [Citations.]" (*Conservatorship of Rand* (1996) 49 Cal.App.4th 835, 841, italics omitted.) To overcome this presumption, appellants must provide an adequate record that demonstrates error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

Godelman's telephonic testimony. The record thus demonstrates no structural error.

*Hoso Foods* is factually distinguishable. There, the arbitrator barred a party from having an independent representative present during the arbitration, even though the governing arbitration rules specified that the parties and other "essential person[s]" were entitled to be present. (*Hoso Foods, supra,* 190 Cal.App.4th at pp. 888-892.) In ordering the arbitration award vacated, the appellate court concluded that the error was of the type presumed to be prejudicial. (*Id.* at p. 892.) No such error occurred here, as the arbitrator did not bar Godelman or Kaufman from attending the arbitration.[5]

Appellants also maintain that the arbitrator's ruling is subject to a rebuttable presumption of prejudice. They direct our attention to *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 416-418, in which our Supreme Court examined the rebuttable presumption of prejudice applicable to juror misconduct, which may be

---

[5]     The other decisions upon which appellants rely also are distinguishable. In those cases, the appellate court concluded that no offer of proof was necessary to preserve a challenge to the exclusion of evidence, as the trial court barred *all* the evidence bearing on a material issue. (*Beneficial etc. Ins. Co. v. Kurt Hitke & Co.* (1956) 46 Cal.2d 517, 522-523 [trial court erroneously excluded all extrinsic evidence concerning interpretation of contract]; *Lawless v. Calaway* (1944) 24 Cal.2d 81, 91 [trial court erroneously excluded expert testimony essential to plaintiff's medical malpractice case]; *In re Eric H.* (1997) 54 Cal.App.4th 955, 961-962 [trial court barred parent from presenting evidence at hearing on dependency petition].) As explained above, the limited record shows no such exclusion of evidence.

In a related contention, appellants maintain that the exclusion of Godelman's telephonic testimony denied Kaufman's right to cross-examine him. However, the record contains no suggestion that Kaufman, in seeking Godelman's telephonic testimony, intended to cross-examine him, that is, question him as an adverse witness (see *Crosat v. Paige* (1957) 147 Cal.App.2d 385, 389). On the contrary, in describing Godelman's potential telephonic testimony to the trial court, appellants maintained that the testimony would have been favorable to Kaufman.

triggered when jurors are inattentive during trial. The court explained that the presumption "is an evidentiary aid to those parties who are able to establish serious misconduct of a type likely to have had an effect on the verdict or which deprived the complaining party of thorough consideration of his case, yet who are unable to establish by a preponderance of the evidence that actual prejudice occurred." (*Id*. at p. 416.)

Because those special circumstances are not present here, we reject appellants' contention. As discussed above, appellants have demonstrated no misconduct by the arbitrator, and their inability to make a showing of prejudice is due to Kaufman's own failure to make an offer of proof to the arbitrator. In sum, appellants have failed to show that the arbitrator denied them a fair hearing by declining to permit Godelman to testify belatedly by telephone.

C. *No Error Regarding Public Policy*

Appellants contend the trial court erred in confirming the award because it contravened a public policy codified in Labor Code sections 432 and 1198.5, which require employers to permit employees to inspect their personnel records and obtain copies of documents they signed regarding their employment.[6] Generally, courts may refuse to enforce an arbitration award when it contravenes "an explicit legislative expression of public policy" or a party's unwaivable rights.

---

[6] Labor Code section 432 states: "If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."

As applicable during the underlying arbitration, subdivision (a) of Labor Code section 1198.5 stated that every employee "has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee."

(*Cotchett, Pitre & McCarthy, supra,* 187 Cal.App.4th at pp. 1416-1417 & fn. 1.) Here, appellants maintain that the arbitration award is unenforceable because it ordered appellants to return the pertinent training documents to Diskeeper. The crux of their contention is that the award contravened the public policy underlying Labor Code sections 432 and 1198.5 to ensure that employees have access to their personnel records. The trial court concluded that appellants had forfeited any such contention by failing to raise it in a timely manner before the arbitrator. As explained below, we see no error in that ruling.

The limited record discloses that the arbitrator's procedural order bifurcated the issue of an award of attorney fees and costs from the other issues, and provided that the former issue would be determined after the "Phase I Hearing." During the evidentiary hearing, Kaufman elicited testimony from a Diskeeper employee that California law required employers to permit employees to inspect their personnel record and copy documents. However, nothing before us suggests that Kaufman argued that those statutes afforded Godelman the right to possess the documents, notwithstanding the settlement agreement. Following the evidentiary hearing, the arbitrator issued an interim award resolving all the issues raised in the arbitration, with the exception of the attorney fees and costs to be awarded to Diskeeper.

Appellants first asserted their contention under Labor Code sections 432 and 1198.5 in their JNOV motion, which they submitted after the arbitrator had conducted the evidentiary hearing and issued the interim award. The motion stated: "Because this area of the law *was not explained*, the [a]rbitrator understandably believed that attorney Kaufman had retained documents that neither he nor his client Godelman had a right to retain, and imposed liability in the [i]nterim [a]ward . . . ." (Italics added and fns. omitted.) The motion argued that the training documents retained by Godelman and disclosed by Kaufman had

22

been provided to Godelman under Labor Code section 432, pursuant to his pre-litigation request for copies of documents in his personnel file. The motion further argued that Labor Code section 432 afforded him "a statutory right to possess the documents." Diskeeper opposed the motion, arguing, inter alia, that the determinations in the interim award were final, and that appellants' sole recourse was to seek the vacation of the arbitration award once the arbitrator issued the fee award.

In denying the motion, the arbitrator stated that "[t]here is no authority in law or rule for a JNOV motion in arbitration," and that "the liability phase of the proceeding ended with the [i]nterim [a]ward." The arbitrator further stated that even if he had the discretion to rehear the case, he would not do so, as the motion merely presented "a different legal theory than that [previously] relied on." In view of these determinations, appellants failed to present their contention in a timely manner to the arbitrator. Accordingly, they forfeited it. (*Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1385-1386 [party forfeited "public policy" challenge to arbitration award by failing to present it to arbitrator].)

Appellants maintain that the arbitration award must be vacated because the arbitrator improperly declined to reconsider the interim award. We disagree. In agreeing to arbitration pursuant to JAMS rules, appellants placed the arbitrator's ruling regarding the interim award beyond judicial review.

Generally, arbitrators may issue an interim award in the course of deciding the issues submitted to them. (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 351; *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1434.) Although arbitrators have no power to use this process "to correct or modify the terms of an original award," the courts apply a deferential standard of review to the

23

arbitrators' determinations regarding their contractual power to render a subsequent award. (*Roehl v. Ritchie*, *supra*, 147 Cal.App.4th at pp. 350-351.)

Here, as noted above (see pt. B.3., *ante*), the parties agreed to arbitration pursuant to JAMS rules. JAMS Rule 11(a) provides: "Once appointed, the [a]rbitrator shall resolve disputes about the interpretation and applicability of these [r]ules and [the] conduct of the [a]rbitration [h]earing. The resolution of the [dispute] by the [a]rbitrator shall be *final*." (Italics added.) Furthermore, JAMS Rule 24 authorizes the arbitrator to make a variety of rulings, including "[p]artial [f]inal [a]ward[s]." As explained in *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1449-1456 (*Greenspan*), under those rules, the arbitrator's decision regarding the extent to which an interim award conclusively determines an issue is *itself* final and not subject to judicial review.

The authority on which appellants primarily rely for the contrary position is inapposite, as it concerns an issue not before us, namely, whether the arbitrator's interim award was subject to judicial confirmation. Appellants direct our attention to a treatise stating that when an arbitrator bifurcates the issues of damages or an award of attorney fees, an interim award following the first phase of the arbitration is not an "award," for purposes of judicial confirmation under the arbitration statutes. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (Rutter Group 2013) ¶ 5:422.5, p. 5-290.) The treatise nonetheless notes that in *Rosenquist v. Haralambides* (1987) 192 Cal.App.3d 62, 68, the appellate court held that an award resolving all the issues except the amount of attorney fees and costs was subject to judicial confirmation. (Knight et al., *supra*, ¶ 5:422.7, at p. 5-290.) In addition to the treatise, appellants point to a federal decision in which the court stated that under the FAA, an award resolving only the issue of liability is not subject to confirmation. (*Employers' Surplus Lines Ins. Co. v. Global*

24

*Reinsurance Corp.-U.S.Branch* (S.D.N.Y., Feb. 6, 2008, No. 07 Civ. 2521(HB)) 2008 U.S. Dist. Lexis 8253, pp. *14-*27.)

The instant appeal does not involve an attempt to confirm an interim award. Rather, the question before us is whether appellants may contest the arbitrator's ruling that the interim award was conclusive and beyond reconsideration. As explained in *Greenspan*, by agreeing to arbitration pursuant to the JAMS rules, appellants placed that ruling beyond judicial review. (*Greenspan, supra*, 185 Cal.App.4th at p. 1451.)

Appellants also rely on two federal decisions to support their contention that the arbitrator's decision must be regarded as erroneous. However, in each case, the reviewing court *affirmed* the arbitrators' ruling regarding the scope and conclusiveness of an interim award because the governing arbitration rules authorized the arbitrators to make such rulings. (*Lagstein v. Certain Underwriters at Lloyd's, London* (9th Cir. 2010) 607 F.3d 634, 643-646 [arbitrators properly awarded punitive damages after issuing initial award, as the governing arbitration rules authorized them to determine scope of initial award]; *United Transportation Union v. Union Pacific Railroad Co.* (S.D. Ill., Mar. 31, 2008, No. 07-CV-251-WDS) 2008 U.S. Dist. Lexis 25885, pp. *3-*8 [arbitrators properly determined that they could modify rulings].) Accordingly, those decisions comport with our conclusion that the arbitrator was authorized to make a final ruling regarding the extent to which the interim award was beyond reconsideration.[7]

---

[7] Appellants suggest that the arbitrator necessarily had the authority to reconsider the liability determinations in the interim award because he modified the attorney fee ruling in the interim award. The interim award stated that Godelman and Kaufman would be jointly and severally liable for any fee award. Following the interim award, Kaufman asked the arbitrator to hold him solely responsible for any fee award, in order to mitigate his potential conflict of interest with his client, Godelman. Kaufman told the arbitrator:
*(Fn. continued on next page.)*

25

Appellants suggest that the trial court erred in failing to determine that Diskeeper was judicially estopped from opposing the vacation of the award. They maintain Diskeeper took contradictory positions before the arbitrator and the trial court. We reject their contention.[8]

In opposing appellant's JNOV motion before the arbitrator, Diskeeper argued that it was improper for the arbitrator to reconsider the interim award in light of appellants' new theory because the award was final regarding liability and damages. Later, before the trial court, Diskeeper argued that appellants had failed to assert their contention in a timely manner because they raised it only after the arbitrator issued the interim award. As those positions are consistent, we see no contradiction supporting the application of judicial estoppel. In sum, the trial

---

"I would certainly stipulate to accept full responsibility for whatever attorney[] fees order is imposed . . . ." The final award determined that Kaufman was solely liable for the fee award.

In our view, the arbitrator's modification of the attorney fee ruling in the interim award does not establish that he was authorized to modify the other determinations in it. The arbitrator's procedural order expressly reserved the amount of a fee award for his final award. The arbitrator apparently concluded that the procedural order, coupled with Kaufman's stipulation, permitted him to modify the attorney fee ruling. For the reasons discussed above, that ruling, like the arbitrator's other procedural rulings, is beyond our review.

[8] Generally, judicial estoppel is intended to protect the judicial process, promote fairness in litigation, and shield parties from improper strategies adopted by opponents. (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 131-132.) The doctrine precludes a party from asserting a position in an action that is inconsistent with a prior position the party advocated with success. (*Id.* at pp. 130-131.) "'The doctrine [most appropriately] applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'"" (*Id.* at p. 131, quoting *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.)

26

court properly concluded that appellants had forfeited their "public policy"-based contention.

D. *No Improper Remedy*

Appellants contend the arbitrator exceeded his powers by imposing remedies against Kaufman not authorized under the settlement agreement, namely, the $70,000 in "liquidated damages" and the award of attorney fees and costs. As explained below, we reject their contentions.

1. *Governing Principles*

As our Supreme Court has explained, arbitrators have broad authority to fashion remedies: "Arbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract. [Citation.] The remedy awarded, however, must bear some rational relationship to the contract and the breach. The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator)." (*Advanced Micro Devices, Inc.*, *supra*, 9 Cal.4th at p. 381.)

Under that standard, "[t]he award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is *compelled* to infer the award was based on an extrinsic source. [Citations.] In close cases the arbitrator's decision must stand. [Citation.]" (*Advanced Micro Devices, Inc.*, *supra*, 9 Cal.4th at p. 381.)

## 2. *No Error Regarding Damages Award*

We begin by examining the arbitrator's award of damages against Kaufman for breach of the settlement agreement. Regarding that award, the arbitrator found that Kaufman twice contravened paragraph 9(A), which obliged Kaufman not to "disclose, disseminate or publicize to any other persons . . . the facts . . . underlying . . . the [l]awsuit . . . ." According to the arbitrator, the two breaches occurred when Kaufman used Diskeeper's training documents during the Pitler deposition and when he showed them to his co-counsel. Noting that paragraph 9(E) provided for an award of $35,000 in liquidated damages for each breach of paragraph 9, the arbitrator imposed a $70,000 award for "liquidated damages" on Kaufman.

Appellants attack the award's remedies on several grounds. We reject the challenges, as they contest legal and factual determinations beyond judicial review, and the remedies are rationally related to the settlement agreement.

### a. *'Carve Out' Covenant*

Appellants maintain that the arbitrator erred in concluding that Kaufman's use of the training documents in another lawsuit constituted a breach of his obligation under subparagraph A of paragraph 9. They point to paragraph 9(D), which they argue contained a "'carve out' covenant" limiting that obligation, for purposes of Kaufman's legal services in other litigation against Diskeeper. According to appellants, the "carve out" covenant effectively permitted Kaufman to use the training documents in any such litigation.

Paragraph 9(D) provided: "Nothing contained herein is intended to restrict or limit Kaufman's ability to represent [specified] persons." Nonetheless, the subparagraph obliged Kaufman to engage in mediation on behalf of those persons

28

before initiating litigation against Diskeeper, and imposed a limit on the maximum initial demand that Kaufman could assert during any mediation. The subparagraph further stated: "Notwithstanding this [p]aragraph, Kaufman shall agree not to disclose the amounts paid, consideration or any terms and conditions of this [a]greement."

Appellants' contention fails, as it constitutes an attack on the arbitrator's interpretation of the settlement agreement. Generally, the arbitrator's determinations regarding contract interpretation are beyond judicial review, unless "the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185.) In determining that Kaufman had breached the duty of confidentiality, the arbitrator noted that Kaufman had signed the settlement agreement expressly acknowledging that he would be bound by the non-disclosure provisions of paragraph 9. Rejecting Kaufman's contention that paragraph 9(D) relieved him of the broad non-disclosure obligations of paragraph 9(A), the arbitrator found that the specific language of paragraph 9(A), mandating that all facts underlying the lawsuit remain "'strictly confidential,'" "control[led] over" the more general language of paragraph 9(D). As nothing in the arbitration agreement barred the arbitrator from making this determination, appellants may not challenge it on appeal.[9]

---

[9]     Nor would we find error were we to address the contention. Although paragraph 9(D) asserts that nothing in the settlement agreement limits Kaufman's ability to represent specified persons, it imposes restrictions on Kaufman regarding any such representation, including duties to engage in mediation and curtail his demands in mediation. Viewed in context, Kaufman's obligations "not to disclose the amounts paid, consideration or any terms and conditions of [the settlement] agreement" is applicable only to those
*(Fn. continued on next page.)*

29

### b. *Amount of Damages*

Appellants contend the arbitrator erred in assessing $70,000 in "liquidated damages" against Kaufman under paragraph 9(E), which stated in pertinent part: "PLAINTIFFS [Godelman and LeShay] agree that the sum of $35,000 will be deemed reasonable liquidated damages for each breach of [paragraph 9] . . . ." The crux of their argument is that Kaufman was not a party to that provision of the settlement agreement.[10]

Appellants have forfeited their contention, as the limited record before us does not show that they raised it before the arbitrator.[11]  However, we would reject the contention were we to consider it, as it constitutes a challenge to the arbitrator's interpretation of the settlement agreement.  Under paragraph 9(B), Kaufman agreed "to be bound by the non-disclosure terms of this [a]greement." As explained above (see pt. 2.a., *ante*), the arbitrator determined that Kaufman's obligations under paragraph 9(B) encompassed the duties specified in paragraph 9(A), even though that paragraph imposed those duties only on "PLAINTIFFS." Because paragraph 9 was entitled "Confidentiality," the arbitrator apparently further concluded that the "non-disclosure terms" of the agreement to which

---

mediations.  The paragraph thus did not displace his obligation under paragraph 9(A) not to disclose the "facts" underlying Godelman's and LeShay's lawsuit in other proceedings.

[10]     Appellants suggest that the arbitrator expressly found that Diskeeper suffered no monetary damages from Kaufman's breach of his duties under paragraph 9(A). However, the award reflects only a finding that Diskeeper failed to show monetary damages from Godelman's violation of his duties under paragraph 8.

[11]     We note that appellants' JNOV motion asserted no such challenge to the damages award.  Furthermore, at the hearing on the JNOV motion, Kaufman acknowledged that the $70,000 award had been assessed solely against him alone, but raised no objection to it.  Rather, he requested that any award of attorney fees and costs also be assessed solely against him.

Kaufman had subjected himself encompassed the other provisions of paragraph 9, including paragraph 9(E). For the reasons discussed above (see pt. 2.a, *ante*), that determination is beyond the scope of our review. As the award of damages bore "some rational relationship to the contract and the breach" and was not based on "an extrinsic source," it did not exceed the arbitrator's powers. (*Advanced Micro Devices, Inc.*, *supra*, 9 Cal.4th at p. 381.)[12]

In a related contention, appellants suggest that the liquidated damages provision was unenforceable because Diskeeper presented no evidence during the arbitration that the provision was reasonable. We disagree. Subdivision (b) of Civil Code section 1671 provides that absent exceptional circumstances not present here, "a contract liquidating the damages for the breach of the contract is valid unless *the party seeking to invalidate the provision* establishes that the provision was *unreasonable* under the circumstances existing at the time the contract was made." (Italics added.) In view of the statute, the burden was on appellants to show that the liquidated damages provision was defective. (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654-655.) Because the record before us discloses no evidence that the liquidated damages provision was, in fact, unreasonable or that appellants attempted to challenge it before the arbitrator, they have failed to show error. In sum, the arbitrator did not exceed his powers in awarding damages against Kaufman.

---

[12] Although the arbitrator's interpretation is not subject to our review, his conclusion that Kaufman was a party to paragraph 9(E) was reasonable. Because actual damages from breaches of the duties in paragraph 9(A) were difficult or impossible to assess, the settlement agreement necessarily included a liquidated damages provision regarding them. Accordingly, the arbitrator reasonably determined that the "non-disclosure terms" to which Kaufman agreed included the liquidated damages provision.

### 3. *No Error Regarding Award of Attorney Fees and Costs*

Appellants contend that the arbitrator improperly ordered Kaufman to pay an award of attorney fees and costs. In issuing the fee award, the arbitrator relied on two independent grounds: first, that Kaufman engaged in a negligent representation when he assured Diskeeper that Godelman had returned the documents required under the settlement agreement; second, that the fee provision in the settlement agreement afforded Diskeeper an entitlement to an award from Kaufman. Appellants challenge the first ground, arguing that the arbitrator "fashioned a remedy not recognized in modern American jurisprudence -- an award of attorney[] fees and costs on a tort claim." They also challenge the second ground, asserting that Kaufman was not a party to the fee provision.

We need not address appellants' contention regarding the first ground, as they have not shown that the arbitrator exceeded his powers in making the award on the second ground. Appellants have forfeited any challenge to the second ground because the record discloses no objection to it before the arbitrator or the trial court. Moreover, we would reject appellants' contention in the absence of a forfeiture. The fee provision in the settlement agreement stated: "In the event *any* litigation, arbitration, or other proceeding is brought for the interpretation or enforcement of this [a]greement, or because of an alleged dispute, default, misrepresentation, or breach in connection with *any of the provisions of this* [*a*]*greement*, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees, costs, and expenses actually incurred . . . ." (Italics added.) As explained above (see pt. D.2., *ante*), the arbitrator concluded that Kaufman was a party to the settlement agreement, as his signature on the agreement made him subject to paragraph 9. In view of the broad language of the fee provision, the arbitrator concluded that Kaufman also subjected himself to that

32

provision. Although that determination is beyond our review, we would regard it as reasonable were we to examine it. (See *Pacific Preferred Properties, Inc. v. Moss* (1999) 71 Cal.App.4th 1456, 1461-1463 [broker subject to limited obligations under contract was bound by contract's fee provision, in view of its terms].) We therefore see no error in the award of attorney fees and costs.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.