United States Court of Appeals,

Fifth Circuit.

No. 94-60772.

GULF COAST INDUSTRIAL WORKERS UNION, Plaintiff-Appellant,

v.

EXXON COMPANY, USA, Defendant-Appellee.

Dec. 18, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Gulf Coast Industrial Workers Union brought suit against Exxon Company, USA to enforce an arbitration award in favor of one of its members, Robert Chamblin. The district court granted summary judgment in favor of Exxon Company, USA, vacating the arbitration award on several grounds. We affirm on the ground that the arbitrator misled Exxon into believing that evidence was admitted, and then refused to consider that evidence.

I.

BACKGROUND

Robert Chamblin ("Chamblin") was employed by Exxon Company, USA ("Exxon") as a process technician at Exxon's Baytown Refinery in Baytown, Texas. As a process technician, Mr. Chamblin was responsible for producing and handling highly volatile gasses and liquids at high temperatures and pressures. On November 3, 1992, at Exxon's request, agents of Interquest, Inc. ("Interquest"), a

1

canine contraband detection service, searched various parts of the Baytown Refinery for drugs and alcohol. One of the drug dogs used by Interquest alerted to Chamblin's car, which was parked in the Refinery parking lot. Chamblin then allowed Interquest's agent, Debbie Farmer, to search his vehicle. Farmer found the stub of a hand-rolled cigarette, which she suspected to contain marijuana, some green vegetation, and a suspected marijuana seed. She placed the items that she found in a plastic bag for subsequent testing.

Another Interquest employee, Mike Ferdinand, later performed a Dequenois Levine Reagent ("DLR") test on the substances found in Chamblin's truck. A DLR test determines whether a substance contains marijuana. The test showed that the cigarette stub contained marijuana, but that the leafy substance did not.[1] The cigarette stub was consumed during the test.

Under Exxon's Alcohol and Drug Use Policy (the "Drug Use Policy"), Exxon was allowed to require employees to take a drug test "where reasonable cause exist[ed] to suspect alcohol or controlled substance misuse." The Drug Use Policy further provided that "refusal to submit to testing is grounds for disciplinary action, including termination of employment." After learning that the cigarette stub found in Chamblin's car tested positive for marijuana, Exxon ordered him to submit to a reasonable cause drug test. Chamblin refused to submit to such a test.

Exxon twice explained to Chamblin that he had been ordered to submit to a test, and that he could be terminated for refusing to

---

[1]The suspected marijuana seed was not tested.

submit. Exxon also provided him with a copy of the Drug Use Policy, and read to him the portion of the policy stating that he could be terminated for refusing to submit to a drug test. Chamblin stated that he understood the consequences of his actions, but still refused to submit to a test. Exxon then suspended Chamblin, and later terminated him for refusing to take a drug test.

Chamblin was a member of the Gulf Coast Industrial Workers Union (the "Union"), which had a collective bargaining agreement ("CBA") with Exxon. Under the CBA, Exxon could only discharge a worker for just cause. Both possession of marijuana on Exxon property and refusing to take a drug test when reasonable cause to suspect drug use constituted just cause. The CBA also provided that the Union could challenge the discharge of a worker by submitting the dispute to arbitration. The Union submitted the issue of whether Exxon had just cause to terminate Chamblin to arbitration.

At the arbitration hearing, Farmer testified that the drug dog alerted to Chamblin's vehicle and that, based on her thirteen years of experience, the substance found in Chamblin's vehicle appeared to her to be marijuana. She also testified that Ferdinand performed a DLR test on the hand-rolled cigarette stub, which confirmed the presence of marijuana. Exxon attempted to elicit testimony to establish Substance Analysis Report ("SAR"), which contained the drug test results, as a business record. However, the Arbitrator informed Exxon that it did not have to be

3

established, because it was already in evidence.[2]  The Union did not object to Farmer's testimony about Ferdinand's performance of the drug test.  Exxon did not present any evidence of the accuracy of the DLR test;  however, the parties had already stipulated that "[t]he DLR test is an accurate method for testing substances for the presence of marijuana."  Record at 173.  Ferdinand did not testify at the arbitration hearing.

The arbitrator ruled that Exxon did not have reasonable cause to order Chamblin to submit to drug testing, and ordered that he be reinstated with back pay.  The arbitrator so ruled because he found

---

[2]The following dialogue occurred during the arbitration hearing:

> Counsel for Exxon:  I would like to move to have this submitted as a business record.
>
> Arbitrator:  Well, it's already in.
>
> Counsel for Exxon:  Well, it was stipulated—
>
> Counsel for Union:  Yeah I'm not going to object to the admission of any of them, I'm going to have cross-examination to question you about them so you don't have to go through all that form of processing, they are all in.
>
> Counsel for Exxon:  Okay.
>
> Arbitrator:  That was my understanding.
>
> Counsel for Exxon:  Well, just for clarification, my understanding was that it was stipulated as a document from Interquest but it didn't have the stipulation as a business record.
>
> Arbitrator:  If there are objections to its admission into evidence, Ms. Groth will object and otherwise let's just assume they're all in.
>
> Counsel for Exxon:  Okay....

4

that Exxon did not prove that the substance found in Chamblin's vehicle was marijuana. He stated that the SAR did not establish that the substance was marijuana because it was hearsay, and did not even have the status of a business record. The arbitrator then spent five pages of his decision in a diatribe on the unreliability of hearsay.

The Union then filed suit against Exxon in the district court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the arbitration award. Exxon filed a counterclaim seeking to vacate the award. Both parties moved for summary judgment. The district court granted summary judgment in favor of Exxon, vacating the arbitration award on several grounds. One of those grounds was that the arbitrator lulled Exxon into believing that the SAR was admitted into evidence and then refused to consider it on the ground that it was unreliable hearsay. The Union appeals from the district court's vacatur.

## II.

## DISCUSSION

In reviewing a district court's vacatur of an arbitration award, we posit the same question addressed by the district court: whether the arbitration proceedings were fundamentally unfair. *Forsythe Intern., S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1021 (5th Cir.1990). We review the district court's conclusion de novo. *Id.*

"Judicial review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 413 (5th Cir.1990). Under the Federal Arbitration Act, 9

5

U.S.C. § 1, *et seq.,* we can only disturb an arbitration award on the grounds set out in that Act. The case before us, however, fits squarely into one of those grounds.

Section 10 of the Federal Arbitration Act provides that a district court may vacate an arbitration award where—

> the arbitrators were guilty of misconduct in ... refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

In the instant case, not only did the arbitrator refuse to consider evidence of the positive drug test, he prevented Exxon from presenting additional evidence by misleading it into believing that the SAR had been admitted as a business record. Exxon attempted to establish the SAR as a business record, but the arbitrator stopped it, stating that the test was already admitted. Further, Exxon had no reason to have Ferdinand testify as to how he conducted the DLR test, because neither the arbitrator nor the Union objected to Farmer's testimony that the cigarette stub found in Chamblin's vehicle tested positive for marijuana. The arbitrator used Exxon's failure to present evidence that he told Exxon not to present as a predicate for ignoring the test results. Such misconduct falls squarely within the scope of Section 10, and is grounds for vacatur.

## III.

## CONCLUSION

Accordingly, the district court's vacatur is AFFIRMED. We note that this vacatur is without prejudice to the parties proceeding in accordance with law.