**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 01-50339**

---

**RICHARD BROOK,**

**Plaintiff-Appellee,**

**v.**

**PEAK INTERNATIONAL, LTD.,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court
for the Western District of Texas
Austin Division**

---

June 13, 2002

Before JONES, WIENER and PARKER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Brook and Peak International, Ltd., Brook's former employer, arbitrated their contractual dispute before an arbitrator selected by the American Arbitration Association ("AAA"). The arbitrator's award favored Peak. Brook filed a motion to vacate the arbitration award in the district court. The district court held that the arbitrator selected by the AAA was without power to decide the dispute because the AAA did not follow the selection procedure outlined in Brook's Employment Agreement. The district

court vacated the arbitration award pursuant to 9 U.S.C. § 10(a)(4). Brook has appealed. Although we agree that AAA seriously erred by deviating from the parties' contractual selection process, we conclude that Brook never timely objected to the selection process on the ground he now espouses, hence, the objection was waived. The award must be reinstated.

## BACKGROUND

On January 1, 1998, Richard Brook entered into an employment agreement (the "Employment Agreement") with Peak International to become its president and chief operating officer. Less than a year later, he was terminated. A dispute arose regarding Brook's severance benefits. On May 7, 1999, pursuant to the terms of the Agreement, Brook filed a demand for arbitration with the AAA alleging breach of his Employment Agreement.[1]

---

[1] The dispute resolution clause of the Employment Agreement provided as follows:

> 4. Resolution of Disputes; Arbitration. Should a dispute arise concerning this Agreement, its interpretation or termination, either party may request a conference with the other party to this Agreement and the parties shall meet to attempt to resolve the dispute. Failing such resolution within thirty (30) days of either party's request for conference, the Company and the Employee shall endeavor to select an arbitrator who shall hear the dispute. In the event the parties are unable to agree on an arbitrator, the Employee and the Company shall request the American Arbitration Association to submit a list of nine (9) names of persons who could serve as an arbitrator. The Company and Employee shall alternately remove names from this list (beginning with the party which wins a flip of a coin) until one person remains and this person shall serve as the impartial arbitrator. The decision of the arbitrator is final and binding on both parties. Each party shall bear equally all the costs of the arbitrator.

2

This appeal concerns the arbitrator selection process. The process began on May 18, 1999, when the AAA submitted a list of nine prospective arbitrators and instructed the parties to follow the procedure outlined in the Employment Agreement to select the arbitrator. On May 28, Brook struck one individual from the list. Brook's counsel also stated:

> [Peak's] counsel [] has agreed to Austin as the site of the arbitration hearing and hence it strikes us that perhaps an arbitrator from Austin would be more efficient and economical for all concerned. To that end, [Peak's counsel] and I will try to come up with a mutually acceptable Austin-based arbitrator from your AAA-Austin list, if this is acceptable to the association.

Peak, citing its understanding that a new list of arbitrators from Austin was to be provided by the AAA, did not submit a strike to the AAA's first list of arbitrators.

On June 9, the AAA informed the parties that "there were no mutual choices [from the previously provided list of arbitrators] who were able to accept the appointment." The AAA then advised: "[the AAA is] enclosing a second list of names from our panel. We ask that this list be considered supplemental to the list previously provided and every consideration be given to releasing names struck from that list." The AAA's June 9 letter did not refer to Brook's May 28 letter or Brook's request for selection of an arbitrator from the AAA's Austin list, and it did not direct the parties to employ the selection process outlined in the Employment Agreement. Rather, the letter instructed the

3

parties to strike the names of unacceptable arbitrators and indicate their order of preference by number. The letter also provided that "[i]f this list is not received by the [AAA] on or before Monday, June 21, 1999, or if there are no mutual choices, the appointment will be made per Section 12 of the [AAA] Rules." If the parties failed to submit their strikes by June 21, the letter warned, "all names submitted may be deemed acceptable."

Complying with the June 9 letter, Brook submitted his strike list and ranked the remaining arbitrators in order of preference.[2] Peak did not submit a list of strikes before June 21.

On July 14, Peak's counsel informed the AAA that he was withdrawing and that Peak intended to substitute John McCamish as counsel. Peak also advised the AAA of ongoing discussions with Brook's counsel regarding the possible mutual selection of Judge Joe Hart as arbitrator. On July 16, Mr. McCamish requested a seven-day extension of time from Brook's counsel to review the file before advising whether his client would agree to the selection of Judge Joe Hart. Brook's counsel rejected the request for extension of time.

On July 26, the AAA notified the parties that Professor David Sokolow had been selected as arbitrator. Peak immediately protested the appointment of Professor Sokolow, citing concerns

---

[2] Although Brook now challenges the selection of Judge Miller as arbitrator, he did not strike Judge Miller from the AAA's second list.

4

regarding Professor Sokolow's potential conflicts with counsel and his inexperience with employment-related disputes. Peak also submitted its strikes to the list of arbitrators. On August 5, Peak sent a second letter of objection to the AAA, arguing that "the entire appointment process violates the parties' written agreement." Peak requested that the AAA comply with the terms of the Employment Agreement by providing a list of nine, rather than seven, potential arbitrators and by allowing the parties to alternately remove names from the list until only one remained. Brook filed no objection to the selection of Professor Sokolow or the process used by the AAA and did not respond to Peak's objections.

On August 11, the AAA withdrew the appointment of Professor Sokolow and appointed Judge Chuck Miller as arbitrator. The AAA's letter appointing Judge Miller refers neither to Peak's objections to the selection process nor to its demand for compliance with the selection process outlined in the Employment Agreement.

On August 13, Brook registered "his protest to the process used by the [AAA] in the selection of the arbitrator." In a letter to the AAA and opposing counsel, Brook objected to the appointment of Judge Miller "because the appointment [was] not made in compliance with AAA rules and procedures." Brook also requested that the AAA reinstate "the properly appointed individual,

5

Professor David Sokolow," as arbitrator. However, Brook's August 13 letter does not mention the Employment Agreement or the AAA's failure to follow the contractual selection process.

On August 26, Peak notified the AAA that it was "willing to forego its complaints of procedural irregularities that have occurred and proceed forward if Brook agrees to Mr. Miller as arbitrator." Peak also stated that "if Brook is unwilling to agree to [the appointment of Judge Miller] . . . then Peak would continue to assert its complaint, outlined in [its] letter of August 4, 1999, that the entire appointment process to date has violated the terms of Brook's employment agreement . . . ." The record contains no response from Brook, and no further objection by Brook to the appointment of Judge Miller. The parties proceeded to arbitrate their dispute before Judge Miller.

After months of discovery and related disputes, the parties participated in an eight-day arbitration hearing before Judge Miller. In his opening remarks to the parties on the first day of arbitration, Judge Miller stated: "I have executed the oath of arbitrator . . . [s]o unless there are any other objections, we'll go ahead and convene the arbitration." Brook raised no objections, and the arbitration convened. After considerable

6

expense to the parties and a lengthy arbitration process,[3] Judge Miller entered an arbitration award favorable to Peak.

Brook filed a federal lawsuit in which he moved to vacate the arbitration award, arguing that (1) the arbitration award was arbitrary and capricious and/or based on a manifest disregard for the law, (2) the arbitrator exceeded his authority by addressing issues not raised by the parties, and (3) "the arbitrators were guilty of misconduct . . . or other misbehavior" that warranted vacatur pursuant to 9 U.S.C. § 10(a)(3) because the AAA violated its own arbitrator selection rules. Brook's motion to vacate does not refer to the Employment Agreement, does not raise the AAA's failure to follow the selection process outlined in the Employment Agreement as grounds for vacatur, and does not cite 9 U.S.C. § 10(a)(4).

On January 17, 2001, a magistrate judge heard oral argument regarding Brook's motion to vacate and raised, *sua sponte*, the AAA's failure to follow the selection process outlined in the Employment Agreement as a possible ground for vacating the arbitration award. Several days later, Brook filed his "Supplement to Motion to Vacate Arbitration Award," asserting for the first time that the AAA's failure to select the arbitrator in the manner

_____

[3] The record before us indicates that the parties spent over $650,000 in fees and costs related to the arbitration of their dispute before Judge Miller.

7

provided by the Employment Agreement rendered Judge Miller powerless to arbitrate the dispute. Based on this argument, the magistrate judge recommended that the district court vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4). The district court agreed with the magistrate judge's recommendation, vacated the award, and precipitated Peak's appeal.

**DISCUSSION**

**A.**

In light of the strong federal policy favoring arbitration, "[j]udicial review of an arbitration award is extraordinarily narrow." Gulf Coast Indus. Worker's Union v. Exxon Co., 70 F.3d 847, 850 (5th Cir. 1995). This court reviews an order vacating an arbitration award *de novo*, a standard that is "intended to reinforce the strong deference due an arbitrative tribunal." McIlroy v. Painewebber, Inc., 989 F.2d 817, 820 (5th Cir. 1993).

Section 10 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), provides "the only grounds upon which a reviewing court may vacate an arbitrative award." McIlroy, 989 F.2d at 820 (citation omitted). Section 10 allows vacatur, *inter alia*, "[w]here the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10 (a)(4). A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of

8

arbitration. <u>Executone Information Sys., Inc. v. Davis</u>, 26 F.3d 1314, 1320-21 (5th Cir. 1994).

**B.**

Arbitration is a matter of contract. <u>AT&T Tech., Inc. v. Communication Workers of America</u>, 475 U.S. 643, 648, 106 S.Ct. 1415 (1986). Thus, "[t]he power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed." <u>Szuts v. Dean Witter Reynolds, Inc.</u>, 931 F.2d 830, 831 (11th Cir. 1991). Parties to an arbitration agreement may determine by contract the method for appointment of arbitrators. The FAA expressly provides that where a method for appointment is set out in the arbitration agreement, the agreed upon method of appointment "shall be followed." 9 U.S.C. § 5.

Several courts, relying on § 5, have determined that "[a]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated." <u>Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos</u>, 25 F.3d 223, 226 (4th Cir. 1994); <u>see</u> <u>also</u>, <u>Avis Rent-A-Car Sys., Inc. v. Garage Emp. Union, Local 272</u>, 791 F.2d 22, 25 (2d Cir. 1986) ("Courts generally enforce [selection clauses] strictly, vacating awards entered by arbitrators whose qualifications or method of appointment fail to conform to arbitration clauses."); <u>R.J. O'Brien & Assoc., Inc. v. Pipkin</u>, 64 F.3d 257, 263 (7th Cir. 1995) ("[I]n

9

order to enforce an arbitration award, the arbitrator must be chosen in conformance with the procedure specified in the parties' agreement to arbitrate."). However, "a 'trivial departure' from the parties' agreement [] may not bar enforcement of an award." R.J. O'Brien, 64 F.3d at 263. Brook relies on these cases and argues that the arbitration award must be vacated because Judge Miller was not appointed according to the process outlined in the Employment Agreement.

To state that the AAA failed to follow the simple selection procedure outlined in Brook's Employment Agreement is insufficient: the AAA flouted the prescribed procedures and ignored complaints from both sides about the irregular selection process. Rather than submitting a list of nine names and instructing the parties alternately to strike names from the list until only one remained, the AAA submitted two lists containing the names of fifteen potential arbitrators. The AAA instructed the parties to strike all unacceptable arbitrators and rank the remaining candidates in order of preference. The AAA's departure from the selection procedure outlined in the Employment Agreement was utterly unwarranted. Because arbitration is a creature of contract, the AAA's departure from the contractual selection process fundamentally contradicts its role in voluntary dispute resolution. The AAA must follow the selection procedures outlined in the arbitration agreement. 9 U.S.C. § 5.

10

Nevertheless, despite its asserted efficiencies over judicial proceedings, arbitration remains an adversarial event, and parties must insist upon the enforcement of their contractual rights before the arbitrators as they do in court. This is especially true if any case is to be made, under the exceedingly narrow statutory standards, for a later judicial review of the arbitration.

In the cases cited above, where federal courts vacated arbitration awards because of irregularities in the process for selecting arbitrators, the complaining party preserved its objection during the arbitration proceeding. Here, however, Brook never objected to the AAA's failure to follow the selection process in the Employment Agreement (until prompted by the federal magistrate judge long after the arbitration had run its course). It is true that Brook filed a written objection to the AAA's failure to follow its own selection rules,[4] but he also condoned the AAA's ignoring the Employment Agreement when he urged the AAA to reinstate the "properly appointed" arbitrator, Professor Sokolow, although Sokolow had not been appointed according to the terms of the Employment Agreement. The failure to file a clear written objection to a defect in the selection process constitutes

---

[4] Brook argues in the alternative that the AAA's failure to follow its own selection rules entitles him to vacatur of the arbitration award. This makes no sense, as there was no agreement by Peak to modify the Employment Agreement by adopting the AAA selection method.

11

waiver.  <u>See</u>, <u>e.g.</u>, <u>Health Services  Management Corp. v. Hughes</u>, 975 F.2d 1253, 1263-64 (7th Cir. 1992) (citations omitted).[5]

Brook compounded his inaction by failing to object to the error in the selection process before Judge Miller during the arbitration proceedings.  In particular, at the outset of the arbitration hearing, Judge Miller invited the parties to state their objections to the arbitration on the record, and Brook did nothing.  This court has previously held that objections to the composition of arbitration panels must be raised "at the time of the hearing."  <u>Bernstein Seawell & Kove v. Bosarge</u>, 813 F.2d 726, 732 (5th Cir. 1987).  Brook's failure to object at the hearing constitutes waiver.  <u>Id.</u>

Alternatively, before proceeding to arbitration, Brook could have sought an order from the district court compelling arbitration before a properly selected arbitrator pursuant to sections 4 and 5 of the FAA.  But Brook did not timely go to court.  In sum, Brook did not state clearly his objection to the AAA's failure to follow the Employment Agreement when an arbitrator was selected; Brook made no effort to preserve his objection to arbitrating while the dispute was pending before Judge Miller; and Brook finally raised the crucial objection after the magistrate

---

[5]      Peak objected several times to AAA's violation of the selection terms of the Employment Agreement, but it ultimately acquiesced in Judge Miller's appointment.  Peak's objection cannot support Brook's vacatur motion.

12

judge conceived it.  "It is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators when the result turns out to be adverse."  <u>Marino v. Writers Guild of America, East, Inc.</u>, 992 F.2d 1480, 1484 (9th Cir. 1993).

We do not hold that Brook had to exhaust all of the described avenues of objecting to the arbitrator selection process, but as was done in the cases on which he relies, he had to make plain and timely his exact objection so that a responsible party – whether the AAA or the arbitrator or a federal court – could have enforced the Employment Agreement.

## CONCLUSION

For the reasons stated above, we **REVERSE** the judgment of the district court and **REMAND** entry of a judgment enforcing the arbitration award.

**REVERSED** and **REMANDED.**