**Reverse and Render; Opinion Filed January 27, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00183-CV

**SANTOS NAVARRO ROSALES, Appellant**
**V.**
**LONE STAR CORRUGATED CONTAINER CORPORATION, Appellee**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-14021**

# MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Myers

This is an accelerated, interlocutory appeal from an order vacating an arbitration award in favor of appellant Santos Navarro Rosales. In four issues, Rosales argues that (1) the trial court erred by vacating the arbitration award for arbitrator misconduct; (2) the trial court's order vacating the award is void because the trial judge had no jurisdiction to hear the case; (3) the trial court erred in vacating the award because appellee Lone Star Corrugated Container Corporation's motion to vacate was untimely; and (4) the trial court erred in ordering unrequested relief. We reverse the trial court's order and render judgment confirming the arbitrator's final award.

### BACKGROUND AND PROCEDURAL HISTORY

On November 7, 2015, Rosales filed this negligence lawsuit against Lone Star. Rosales had worked there for approximately thirty-five years as a machine operator helper, which required heavy lifting, bending and twisting. Rosales suffered a workplace injury to his back, and he alleged

that Lone Star failed to maintain a safe and healthful workplace and that it failed to train employees on safety measures and lifting techniques. Lone Star filed an answer.

On March 11, 2016, a Rule 11 agreement between the parties was filed with the district court stipulating to arbitration. On March 22, the parties filed an agreed motion to refer to arbitration and for abatement of proceedings. Three days later, on March 25, the trial judge signed an order abating the case until further order of the court.

Judge Nancy A. Thomas (the "arbitrator") was appointed the arbitrator by agreement of the parties. The arbitration was conducted pursuant to the Lone Star Dispute Resolution Plan (DRP) and the Dispute Resolution rules and procedures. The DRP also provided the arbitration would be governed by the Federal Arbitration Act (FAA).

The arbitration hearing occurred over a four-day period, from February 27 to March 2, 2018, in Dallas, Texas. On July 16, 2018, the arbitrator made an interim award in favor of Rosales on the issue of liability and reopened the hearing on the issue of damages. The arbitrator conducted a telephonic hearing on damages on July 24, at which counsel for both parties participated. On September 17, 2018, the arbitrator signed a twenty-four page final award in favor of Rosales.

On October 29, 2018, Rosales filed a motion to lift the abatement order and to confirm the arbitration award. On December 7, Lone Star filed a response and countermotion to vacate the arbitration award, arguing the award should be vacated because the arbitrator prejudiced Lone Star by refusing to hear testimony, i.e., allowing no redirect examination of its corporate representative, Paul McLeod. The agreed order lifting abatement was signed on December 25, 2018. On January 6, 2019, Rosales filed a response to Lone Star's motion to vacate.

The hearing on Rosales's motion to confirm and Lone Star's motion to vacate was held on January 23, 2019. By that time, the trial judge that had signed the abatement order was no longer the sitting judge of the 95th Judicial District Court, and a visiting judge was assigned to the case.

–2–

Lone Star, however, objected to the motions being heard by a visiting assigned judge. The case was then reassigned to another visiting judge, who presided over the hearing. After listening to the parties' arguments, the assigned judge asked for half an hour to review the parties' filings. When she returned to the bench she denied the motion to confirm and granted the motion to vacate. The written order signed that same day vacated the September 17, 2018 final arbitration award and ordered a new hearing before a different arbitrator.

On February 12, 2019, Rosales filed a motion for new trial and a plea to the jurisdiction. Rosales also requested findings of fact and conclusions of law, and filed a notice of expedited appeal from an interlocutory order. On March 7, the assigned judge signed her findings of fact and conclusions of law, concluding in part as follows: "The Arbitrator prejudiced Lone Star and committed misconduct by preventing Lone Star from providing testimony that would refute the basis of the Award. In this case, the Arbitrator allowed no redirect examination of its corporate representative, McLeod." Lone Star responded to the motion for new trial and the plea to the jurisdiction, and a hearing on the motion for new trial was held on March 28. During that hearing, Rosales objected to the assigned judge that had heard the motion to confirm and the motion to vacate. On that same day, the presiding judge signed an order overruling Rosales's objections to the assigned judge. An order denying the motion for new trial was signed by the assigned judge on April 11, 2019.

## DISCUSSION

In his first issue, Rosales contends the trial court erred in vacating the arbitration award for arbitrator misconduct. Rosales argues that Lone Star failed to present a complete record of the arbitration proceeding, as required to support a vacatur, and that the elements required to support vacatur are not present here.

Review of a trial court's decision as to vacatur or confirmation of an arbitration award is

–3–

de novo and the appellate court reviews the entire record. *See In re Chestnut Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied); *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567 (Tex. App.—Dallas 2008, no pet.); *see also Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1021 (5th Cir. 1990). All reasonable presumptions are indulged in favor of the award, and none against it. *Statewide Remodeling, Inc.*, 244 S.W.3d at 568.

The parties in this case contractually agreed to arbitration under the Dispute Resolution Plan (DRP), and they agreed in the DRP that the arbitration would be governed by the Federal Arbitration Act (FAA). Under the FAA, an arbitration award is presumed to be valid. *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407 (Tex. App.—Dallas 2007, no pet.). Judicial review is "exceedingly deferential" and "extraordinarily narrow." *Id.* at 408 (citing *Sarofim v. Trust Co.*, 440 F.3d 213, 216 (5th Cir. 2006)); *see also Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004).

An arbitration award governed by the FAA must be confirmed unless it is vacated, modified, or corrected under certain limited grounds. *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 841 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Prescription Health Network, LLC v. Adams*, No. 02–15–00279–CV, 2017 WL 1416875, at *3 (Tex. App.—Fort Worth Apr. 20, 2017, pet. denied) (mem. op.). Section 10 of the FAA provides the only grounds upon which a reviewing court may vacate an arbitrative award. *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 Fed. Appx. 208, 211 (5th. Cir. 2016) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). Under section 10(a), a court may vacate an arbitration decision upon the application of any party to the arbitration:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the

–4–

hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Because the FAA does not include an additional ground to vacate an arbitration award based on mere errors in interpretation or application of the law, or mistakes in fact-finding, courts must not "conduct a review of an arbitrator's decision on the merits." *Householder Grp. v. Caughran*, 354 Fed. Appx. 848, 851 (5th Cir. 2009); *see also Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009); *Hudgins v. Ameriprise Fin. Services, Inc.*, 3:17-CV-3125-S, 2018 WL 4717614, at *4 (N.D. Tex. Sept. 30, 2018). "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)); *see Rainier DSC 1, L.L.C. v. Rainier Capital Mgmt., L.P.*, 828 F.3d 362, 364 (5th Cir. 2016).

Additionally, the DRP between the parties adopted specific rules to be followed in the arbitration. Paragraph 22, entitled "Order of Proceedings," gave the arbitrator broad discretion regarding how to conduct the hearing. It states in part that the arbitrator has the authority to set the rules for the conduct of the proceedings, to exercise that authority to expedite the resolution of the dispute, to direct the order of proof, and to direct the parties to focus their presentations on the issues:

> With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute.
>
> The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of

proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

We review the trial court's order to vacate de novo, and we must decide whether Lone Star met its burden to vacate the arbitration award. Lone Star contends the arbitrator improperly refused to hear evidence by not allowing a redirect examination of its corporate representative, McLeod; that this evidence was pertinent and material; and the arbitrator's alleged misconduct prejudiced Lone Star's rights, thereby depriving it of a fundamentally fair hearing. *See* 9 U.S.C. § 10(a)(3); *Hudgins*, 2018 WL 4717614, at *4.

The record shows that the arbitration hearing began on February 27, 2018, and lasted four days. Lone Star called McLeod to testify on the fourth day of the proceedings, March 2, 2018, which was the only day that was transcribed. Rosales had filed the arbitration proceeding against Lone Star alleging negligence as a result of a workplace injury to his back. After a direct examination of McLeod by Lone Star's counsel, counsel for Rosales cross-examined him. During his cross-examination, Rosales's counsel repeatedly asked McLeod questions about his knowledge of Rosales's training over the course of Rosales's years of working at Lone Star—to which McLeod repeatedly responded, "I don't know."

Lone Star cites the following exchange, which occurred after counsel for Rosales cross-examined McLeod:

> THE ARBITRATOR: All right. It is 3:47. I would personally prefer that we conclude with Mr. McLeod at 4:00. I don't know if you're going to have redirect.
>
> [COUNSEL FOR LONE STAR]: I have not decided if I do. It might be one question. Maybe. You're suggesting something else. Okay. I will have no redirect.

At the end of Rosales's recross examination, the arbitrator asked Lone Star's counsel if he wanted to redirect McLeod:

> [COUNSEL FOR ROSALES]: No further questions.
>
> THE ARBITRATOR: All right. Any redirect?

–6–

[COUNSEL FOR LONE STAR]:  I have no redirect, Your Honor.

THE ARBITRATOR:  All right.  Good.  You may stay there or step down.  Let's bring in the next witness.

In his affidavit offered in support of Lone Star's motion to vacate, Lone Star's counsel during the arbitration hearing offered the following account of what happened:

> Over the course of Rosales'[s] counsel's four hour cross-examination, the Arbitrator repeatedly expressed verbal and nonverbal frustration with him.  Specifically, the Arbitrator expressed annoyance and frustration while counsel for Rosales was speaking.  I interpreted these nonverbal cues to reflect the Arbitrator's not giving credence to counsel for Rosales's theories, line of questioning, and the alleged importance of the cross-examination testimony.
>
> In addition to the Arbitrator's nonverbal cues, the Arbitrator repeatedly admonished counsel at least three times for Rosales over the course of his cross-examination for his irrelevant and repetitive line of questioning, as well as his blatant delay tactics saying things like, "I don't really understand this line of questioning," and "we need to move on."  Together with the Arbitrator's non-verbal cues, I interpreted the Arbitrator's admonishments to demonstrate the clear lack of credence the Arbitrator was giving the cross-examination.
>
> Roughly three and a half hours into the cross-examination of McLeod, and after a long series of redundant questions, the Arbitrator admonished Rosales'[s] counsel for the extraordinary length on his cross examination.  Ultimately, when opposing counsel said he had perhaps three (3) more hours, the Arbitrator pointedly gave him another 30 minutes.  The Arbitrator then asked me whether I would have any questions on redirect.  When I stated that I intended to ask a very limited number of questions, the Arbitrator looked at me and shook her head "no."  I was forced to forego redirect and responded, *"You're suggesting something else.  Okay.  I will have no redirect,"* to which the Arbitrator smiled, chuckled, and nodded her head.  Importantly, this would have been my only redirect exam of Mr. McLeod.

[INTERNAL CITATIONS OMITTED].

Counsel for Lone Star states that "[h]ad I conducted an examination on redirect," he would have asked McLeod:

> • why he answered "I don't know" in response to counsel for McLeod's questions about Santos's training;
>
> • if he was employed at Lone Star when Santos began his employment, and, accordingly, whether he had knowledge about Santos's training prior to McLeod starting at Lone Star;
>
> • that he had observed Mr. Rosales working on an almost daily basis since 1992

–7–

and saw him lifting the boxes using proper techniques, under what circumstances McLeod observed Santos working; and

• about his observations about Santos's ability to safely lift boxes, lifting only amounts that he could safely lift.

Lone Star's counsel further states:

McLeod would have been able to testify that he answered "I don't know" because he was not employed with Lone Star during the first 14 years of Rosales's thirty-year tenure with Lone Star. McLeod would have been able to provide testimony that he had daily observed Rosales's work throughout his career and saw him conduct his work in a safe manner using proper lifting techniques. Even further, McLeod would have been able to testify that that [sic] he routinely witnessed Mr. Rosales conducting his work in a safe manner because he worked side-by-side with Lone Star's employees—including Santos—in order to verify that they were working correctly, including correctly and safely lifting boxes.

In its brief, as support for vacating the arbitration award based on arbitrator misconduct, Lone Star analogizes this case to *Gulf Coast Indus. Workers Union v. Exxon Co.*, 70 F.3d 847 (5th Cir. 1995). In that case, an employer discovered marijuana in the automobile of a member of the plaintiff industrial workers' union. *Id*. at 848. He consented to a search of the vehicle after the employer's canine contraband detection service detected the presence of contraband in the car while conducting a routine search on the employer's premises for drugs and alcohol. *Id*. The employer subsequently suspended and later terminated the union member after he refused to take a drug test. *Id*. at 849. During the arbitration hearing, when the employer attempted to qualify a Substance Abuse Report ("SAR")—that contained the results of the test that detected the marijuana—as a business record, the arbitrator informed the employer the SAR did not have to be so qualified because it was already in evidence. *Id*. at 849. The arbitrator later refused to consider the SAR as evidence on the ground it "did not establish that the substance was marijuana because it was hearsay, and did not even have the status of a business record." *Id*. "The arbitrator then spent five pages of his decision on a diatribe on the unreliability of hearsay." *Id*. The district court granted summary judgment in favor of the employer, thereby vacating the arbitration award,

concluding in part that "the arbitrator lulled Exxon into believing that the SAR was admitted into evidence and then refused to consider it on the ground that it was unreliable hearsay." *Id*. at 850. The Fifth Circuit affirmed the district court's vacatur, agreeing the arbitrator engaged in misconduct within the scope of Section 10 of the FAA by refusing to hear evidence pertinent and material to the controversy, i.e., whether the employer had reasonable cause to order the employee to submit to drug testing. *Id*. at 849–50. The Fifth Circuit concluded that "not only did the arbitrator refuse to consider evidence of the positive drug test, he prevented Exxon from presenting additional evidence by misleading it into believing that the SAR had been admitted as a business record." *Id*. at 850. The court also noted that "Exxon attempted to establish the SAR as a business record, but the arbitrator stopped it, stating that the test was already admitted." *Id*.

The situation in the present case is quite different. Lone Star argues that "[a]lthough the arbitrator's non-verbal dissent is not reflected in the transcript, the effects of the arbitrator looking at Lone Star's counsel and shaking her head are clearly reflected in the record." Yet nowhere in the limited arbitration record before us—and only one day from the four-day arbitration hearing was recorded—does the arbitrator deny or refuse a request by Lone Star to redirect McLeod. The transcribed record shows Lone Star's counsel affirmatively declining an opportunity to redirect McLeod: "I have no redirect, Your Honor." In *Gulf Coast*, the record showed the arbitrator told Exxon's counsel he did not need to introduce the report into evidence as a business record *because it was already in evidence*. *Id*. at 850, n. 2. This statement misled Exxon's counsel into believing the SAR had been admitted as a business record, and Exxon did not present additional evidence because it had been misled into believing the report had been admitted. *See id*. Moreover, the evidence cited by Lone Star regarding what allegedly took place here (i.e., that the arbitrator shook her head "no") is the affidavit from Lone Star's counsel. But an affidavit from counsel is no substitute for a written or other official transcript of the arbitration hearing. *See MPJ v. Aero Sky,*

*L.L.C.*, 673 F. Supp. 2d 475, 498–99 (W.D. Tex. 2009) (stating that an attorney's testimony was not a substitute for a written or other official transcript of the arbitration hearing, and that neither side had secured or presented to the court a transcript of any of the arbitration hearings).

Additionally, even if we assume the arbitrator shook her head "no," as the affidavit asserts, "'[i]t is well settled that a party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.'" *Wellman v. Writers Guild of America, West, Inc.*, 146 F.3d 666, 673 (9th Cir. 1998) (quoting *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993)); *see Brotherhood of Locomotive Engineers, Int'l Union v. Union Pacific Ry. Co.*, 134 F.3d 1325, 1331 (8th Cir. 1998) (parties may waive procedural defects not raised to arbitrator in Railway Labor Act arbitration proceeding); *Brotherhood of Ry., Airline, & S.S. Clerks, Freight Handlers, Express & Station Employees v. St. Louis S.W. Ry.*, 676 F.2d 132, 136 (5th Cir. 1982) ("'It is imperative to an efficient and fair administration of justice that a litigant may not withhold his objections, await the outcome, and then complain that he was denied his rights if he does not approve the resulting decision.'") (quoting *Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 380 F.2d 605, 608–09 (D.C. Cir. 1967)); *Schneider v. Southern Ry. Co.*, 822 F.2d 22, 24 (6th Cir. 1987) ("It is well-established that parties to an arbitration may waive procedural defects by failing to bring such issues to the arbitrator's attention in time to allow the arbitrator an opportunity to cure the defects."); *Weinberg v. Silber*, 140 F. Supp. 2d 712, 721 (N.D. Tex. 2001) ("If a party does not protest to the arbitrator, courts generally will not give him a second chance to do so in a motion to vacate."), *aff'd*, 57 Fed. Appx. 211 (5th Cir. 2003). Paragraph 28 of the DRP rules, entitled "Waiver of Objection/Lack of Compliance With These Rules," states that "[a]ny party that proceeds with the arbitration after knowledge that any provision or requirement of these Arbitration Rules has not been complied with, and who fails

–10–

to state objections thereto in writing or in the transcribed record, *shall be deemed to have waived the right to object* [emphasis added]."

There is no indication in the record before us that Lone Star objected to the arbitrator's alleged refusal to allow redirect examination, asked for leave to make an offer of proof of the testimony that would have been included in a redirect of McLeod, or that it moved for an opportunity for further redirect before the close of its evidence. In fact, Lone Star did not even raise the issue of the redirect examination of McLeod until after the arbitrator issued her award against Lone Star.

Lone Star argues that if, as in this case, an arbitrator's misconduct becomes apparent only when the arbitrator rules and relies heavily on the absence of the excluded evidence, a party "who would not have offered the evidence has no reason to object until the award is issued." It points out that the arbitrator "devoted more pages" to summarizing McLeod's testimony "than another witness by far," and that "[n]othing in the Award indicates that the arbitrator nonetheless viewed his testimony as unimportant, redundant, or cumulative."

But apart from failing to show that the arbitrator refused to allow it to introduce evidence, Lone Star's argument overlooks the fact that McLeod's "I don't know" cross-examination testimony—three pages of the arbitrator's twenty-four page report quote this testimony—occurred on the final day of the four-day hearing. The arbitrator's report discusses testimony from a number of other witnesses: Rosales; Martin Lozado (the plant manager); three other Lone Star employees; Rosales's safety expert; Lone Star's safety expert; two orthopedic surgeons who testified for Rosales; and Lone Star's two medical experts. It also references reports provided by the two orthopedic surgeons and Lone Star training documentation that the arbitrator reviewed. The final day of the arbitration hearing—the only day of the four-day proceeding where we have a transcribed record—encompassed the latter portion of McLeod's direct testimony, Rosales's

–11–

cross-examination, and the testimony of Lone Star's safety expert, after which both sides rested. We have no record, therefore, other than what is described in the arbitration award itself, of all of McLeod's direct testimony; the testimony of the three Lone Star employees that testified (co-workers of Rosales); nor is there any record of the two orthopedic surgeons that testified on behalf of Rosales (or of their reports). And as the last full paragraph of the award's legal analysis shows, the arbitrator did not base her award simply on Lone Star's alleged failure to properly train Rosales to do his job:

> Based upon the facts of this case, and after considering the greater weight and degree of credible evidence, the Arbitrator finds and concludes that Lone Star's failure to provide Rosales with a safe workplace, failure to provide Rosales with necessary instrumentalities (specifically including, but not limited to, a platform), and failure to properly train Rosales to do his job was the proximate cause of Rosales'[s] severe spinal stenosis, disc herniation, and other injuries and/or was the proximate cause of the aggravation of any pre-existing conditions of severe spinal stenosis, disc herniation, and other injuries if they did exist.

As both parties acknowledge, "when a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 685 (Tex. App.—Dallas 2010, pet denied). Lone Star argues that we can affirm the trial court's vacatur of the award because the record that we have supports the trial court's finding that the arbitrator's misconduct prevented Lone Star from presenting evidence. We conclude, however, that Lone Star has made no such showing. Accordingly, based on the record, we conclude that Lone Star failed to show that the arbitrator refused to allow it to introduce evidence and, alternatively, that it waived any right to complain about a denial of redirect.

We sustain Rosales's first issue and conclude the trial court erred in vacating the arbitration award. We reverse the trial court's order and render judgment confirming the arbitrator's final

award.  Because of this holding, we need not address Rosales's other arguments.

/Lana Myers/
LANA MYERS
JUSTICE

190183F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SANTOS NAVARRO ROSALES,
Appellant

No. 05-19-00183-CV     V.

LONE STAR CORRUGATED
CONTAINER CORPORATION, Appellee

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-15-14021.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's order vacating the arbitrator's award is **REVERSED** and judgment is **RENDERED** that the arbitrator's final award entered in case number 10021, Dispute Resolutions, Inc., on or about September 17, 2018 be, and here is, **CONFIRMED**. It is **ORDERED** that appellant SANTOS NAVARRO ROSALES recover his costs of this appeal from appellee LONE STAR CORRUGATED CONTAINER CORPORATION.

Judgment entered this 27th day of January, 2020.